**SO ORDERED.**

**SIGNED August 30, 2013.**



_____
**HENLEY A. HUNTER**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

**IN RE: LINDA JEAN LOVE**                                     **CASE NO. 11-80118**

**IN RE: JESSICA ANN HOLLOWAY**                      **CASE NO. 11-81377**

**ORDER SUSPENDING RULING, WITH REASONS,**

**FROM HEARING ON APPLICATIONS TO APPROVE COMPROMISE AND THE**

**AMENDMENTS AND OBJECTIONS THERETO**

On August 22, 2013, a hearing was held on the application of these debtors to settle their respective personal injury cases and pay the proceeds toward the base of the confirmed plans, thus completing same prior to the applicable commitment period. Each Application was filed and noticed as an Application to Approve a Compromise (*Love*, Doc. #40; *Holloway*, Doc. #36), to which, the Standing Chapter 13 Trustee objected in both cases, not to the settlement itself, but rather to request that the funds generated by the settlement of the post-petition, post-confirmation acquired assets be turned over to the Trustee for distribution to the unsecured creditors. (*Love*, Doc. #43; *Holloway*, Doc. #39.) Prior to the hearing, each Application was amended to seek permission of the Court to dedicate the proceeds of the compromise to make all the remaining payments required by the

confirmed plan in a lump sum, i.e. to "pay the base." (*Love*, Doc. #44 ; *Holloway*, Doc. #40.) The Trustee renewed his Objection to the amended applications, although therein citing no case law on the issue, but rather urging the Court to deny the debtors' requests on the basis that the post-petition, post-confirmation acquired assets were not exempt.

First, the Court must address the Applications to Approve the Compromises and the Objection of the Trustee that states, "The Trustee does not object to the approval of the settlement but requests that any net proceeds be turned over to the Trustee for distribution to the unsecured creditors." (*Love*, Doc. #43; *Holloway*, Doc.#39.) The confirmed plans in these cases are silent as to the distribution of after-acquired property, if any; thus the plans do not require the distribution of any after-acquired property to the class of unsecured creditors. Absent such a provision, no such distribution is required, and the Trustee's objection (which distills to a motion for turnover of the after-acquired property) must fail. The confirmed plan under §1327 binds the debtor and all creditors regardless of the distribution to the creditor, and under §§(b) and ( c), confirmation of the confirmed plan vests all property of the estate in the debtor and unless the confirmed plan provides otherwise, the property vesting in the debtor is "free and clear of any claim or interest of any creditor provided for by the plan." The United States Supreme Court has held that the confirmed plan is binding on a creditor even when the terms of the plan violated another applicable provision of the bankruptcy code. *In re Espinosa*, 559 U.S. 260, 130 S.Ct. 1367 (2010).

However, the Code provides a remedy in §1329(a)(1) for modification to, *inter alia,* increase or reduce the amount of payments on claims of a particular class provided for by the plan; or, alter the amount of a distribution under the plan to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan. This remedy is available at any time after confirmation, but before completion of plan payments, upon request of not only the debtor (as is the usual course of business), but also by either the Trustee or the holder of an allowed unsecured claim. In these particular cases, even upon discovery of the after-acquired asset either on the face of the records (the Application), no such motion under §1329 was filed by either the Trustee or an unsecured creditor.[1] Without a motion the Court must address

---

[1] The notices of the Applications to Approve the Compromises and the Amendments were served and noticed upon the Trustee, the United States Trustee, the debtors and the personal

2

this issue in the context of the confirmed plan and the application to prepay the base.

The pre-payment of the base issue arose in this Court most recently in the case of *In re Redmon*, Case No. 12-81085, wherein debtor moved to incur debt for the purpose of prepaying the base. (*Redmon*, Doc. #26.) In that matter, the Trustee's objection asserted that the debtors must pay 100% to the unsecured creditors, again, without citation, but obviously referring to §1325(4)(B), which sets forth that the applicable commitment period may be less than the 3 or 5 years only if "the plan provides for payment in full of all allowed unsecured claims over a shorter period." It was, and remains, this Court's position that the determination to be made under §1325(4)(B) is relevant and made at the hearing on confirmation of the plan, but thereafter, is not relevant to a post-confirmation motion to incur secured debt or to a post-confirmation application to approve a compromise of a post-petition, post-confirmation acquired asset of the estate. Further, in *Redmon,* debtor's counsel's memorandum in support of the motion cited numerous cases in which this Court, relying on *In re McCollum*, 348 B.R. 377 (E.D. LA 2007), *affirmed by In re McCollum*, 347 B.R. 377 (Bankr. E.D. LA 2006), had approved similar requests of debtors to prepay the base from various sources of the funds to do so, and that memorandum was expressly adopted by this Court as support for its findings of fact and conclusions of law, made orally in accordance with F.R.B.P. 7052.[2]

In *McCollum*, the debtor was permitted to sell his residence, and use the sales proceeds in excess of the homestead exemption to pay the base of the confirmed plan, and retain the amount of

---

injury counsel to the debtors, but the unsecured creditors were not served and did not receive a notice of hearing.

In other cases, by contrast, an after-acquired asset may be discovered by the Trustee's evaluation of the income tax returns filed by the debtor as required by §521, or by other means.

[2]*Redmon*, Doc.#30. The memorandum listed several cases wherein this court had approved an early payoff of the base, in one of which a personal injury claim was the source of funding (*O-Connor*, 07-80646). Those findings thus incorporated the following observation in the memorandum: "The majority [of courts] view that the debtor may make a lump sum payment to complete a plan by prepaying the base. We must look to the amount paid, not the number of payments. *In re McCollum*, 348 B.R. 377, 391 (Bankr.E.D.La. 2006). McCollum was a pre-BAPCPA case, but BAPCPA did not materially change 11 U.S.C. §1325(b)(2). *In re Nowlin*, 576 F.3d 258 (5th Cir. 2009). BAPCPA merely changes the formula to compute the plan base." (*Redmon*, Doc.#26.)

3

the homestead exemption. The *McCollum* court explained:

> There are many cases which discuss the merits of Debtor's request. The majority support the payment of a lump sum to complete a plan even when the Debtor has not previously made at least 36 months of payments. See, In re Smith, 237 B.R. 621 (Bankr.E.D.Tx.1999); In re Sounakhene, 249 B.R. 801 (Bankr.S.D.Ca.2000); In re Murphy, 327 B.R. 760 (Bankr.E.D.Va.2005); In re Golek, 308 B.R. 332 (Bankr.N.D.Ill.2004); In re Richardson, 283 B.R. 783 (Bankr.Kan.2002); Massachusetts Housing Finance Agency v. Evora, 255 B.R. 336 (D.Mass.2000); In re Bergolla, 232 B.R. 515 (Bankr.S.D.Fla.1999); In re Martin, 232 B.R. 29 (Bankr.D.Mass.1999); In re Casper, 154 B.R. 243 (N.D.Ill.1993); and In re Moss, 91 B.R. 563 (Bankr.C.D.Ca.1988). The reasons are varied.
>
> One line of cases reasons that nothing in the Code prohibits the early payment of a debtor's obligations under a confirmed plan. These courts hold that a confirmed plan defines the obligations and rights of the parties. Since the early payment does not change the substantive terms of the plan, i.e. claimants receive exactly what was bargained for in the plan as confirmed, an acceleration is not a modification under § 1329. Therefore, once all plan payments have been made, the debtor is entitled to a discharge under 11 U.S.C. § 1328 regardless of when completion occurs. See, In re Smith, 237 B.R. 621 (Bankr.E.D.Tx.1999), aff'd 252 F.3d 1357 (5th Cir.2001); In re Murphy, 327 B.R. 760 (Bankr.E.D.Va.2005); In re Bergolla, 232 B.R. 515 (Bankr.S.D.Fla.1999); and In re Casper, 154 B.R. 243 (N.D.Ill.1993)( Since § 1329 only allows a modification before completion, once the debtor tenders *390 an amount sufficient to buyout the plan, a discharge is due).

*McCollum*, 348 B.R. at 389. It is into this line of cases referenced that this Court finds the issue is settled most consistently within the guidelines of the Bankruptcy Code.

The *McCollum* Court then relied on *Bayshore Nat'l Bank of LaPorte v. Smith* in finding that the prepayment of the plan base does not automatically modify the plan under §1329. *Bayshore Nat'l Bank of LaPorte v. Smith,* 252 F.3d 1357 (5th Cir. 2001). Even so, if the debtor, trustee or an unsecured creditor were to move to modify the plan under §1329(a), the factors pertinent to confirmation of a modified plan specifically include §1325(a), which includes an evaluation of the debtor's good faith, but *exclude* §1325(b), from whence the trustee asserts applicable commitment period requires the unsecured class to be paid 100% of the allowed claims. Therefore, the Trustee's reasoning on this point is flawed.

Equally irrelevant is the issue of whether the source of the funds to be used to pay the balance of the plan payments are exempt, asserted in the Trustee's Amended Objection. An Objection to Claimed Exemption would be filed by a trustee when the debtor lists on Schedule C property that,

4

under §522, is not exempted from property of the estate. If the funds are exempt, they do not constitute property of the estate under §522. However, if the funds are not exempt, under §1306, they are property of the Chapter 13 estate, as the statute includes after-acquired property, over which the debtor remains in possession, "except as provided in a confirmed plan." 11 U.S.C. §1306(b). Debtors in these cases have not amended Schedule C to reflect the funds generated from these personal injury settlements as exempt, thus, no party contests the assertion that the funds do constitute property of the Chapter 13 estate, although the confirmed plan is silent as to the disposition of after-acquired property.

Furthermore, while not determinative of whether to grant the application to approve a compromise and allow the debtor to pre-pay the plan base, the Court recognizes that the next logical question is, "How does pre-paying the base affect the debtor's eligibility for the discharge?" Another bankruptcy court within the Fifth Circuit has answered that question, recognizing the debtor's right to a discharge over the Trustee's response urging otherwise after the Trustee accepted the prepayments for distribution under the plan from the sale proceeds of rental property. *In re McCarthy*, 391 B.R. 372 (Bankr.N.D.TX 2008, *en banc.*) McCarthy involved an above-median income debtor whose confirmed plan required a 60 month applicable commitment period. The plan proposed to pay unsecured creditors as much as they would receive in a hypothetical Chapter 7 case. Due to ownership of rental property, the dividend was calculated at approximately 60%. Debtor and his non-filing spouse then sold the rental property and the funds were paid to the trustee.

The Trustee objected that the 60 month term had not expired and, moreover, argued that reading 11 U.S.C. §1328(a) and 1329(a) as the court proposed would allow a future debtor to "slip the money" under the trustee's door and prompt a discharge. Further, the trustee argued that a debtor might do so in anticipation of a windfall or some change in circumstance that would trigger a modification under 1329 by a creditor or the Trustee.[3] The court concluded that completion of payments under both 1328(a) and 1329(a) was simply a question of fact, although it observed that,

---

[3] Just like the *McCarthy* court envisions a "surreptitious, unexplained and unexpected delivery to the Trustee by a debtor of sufficient funds to pay all remaining plan obligations," this seems to be the real objection of the Trustee in the cases at bar, but the present cases are not procedurally at the same point as in McCarthy, wherein the debtors had already tendered and the Trustee accepted and disbursed the plan payments in full.

5

should the funds be received in manner described by the trustee, and the discharge under §1328(a) could be challenged under 11 U.S.C. §1330.[4] The parties had stipulated that the trustee and the creditors had received notice of the sale, the payments had been made, the trustee had issued a notice of completion, and the process could not be reversed. The Court did observe that a safer procedure for a debtor would be to propose a plan modification under §1329(a), thus notifying both the creditors and the trustee that prepayment was going to occur, that same was in good faith, and not in anticipation of some windfall or other change in circumstances that might have prompted a modification by the creditors or the trustee under §1329, which would have required that plan payments continue for the term and improve the return to unsecured creditors.[5]

Dealing with the prepayment issue requires examining the Trustee's rights and remedies available under the Code once, and how, the post-petition, post-confirmation acquired asset is presented on the record. In this case, although the Trustee's objection is unsupported by any citation, oral argument by the Trustee's staff counsel suggests that the Trustee's concern here is not unlike the suspicion of some sort of sinister conduct or motive envisioned by the Trustee in *McCarthy*. Chapter 13 cases must be administered on a case by case basis. If the Trustee is suspicious of a debtors motives or actions, then appropriate pleadings can be filed to assert bad faith and/or fraud. The Court is unable to fashion a remedy here out of thin air. Put another way, nor can it make a "worst case scenario" with no allegation, much less evidence of, improper conduct or motive. Moreover, the Court cannot simply reach back to the considerations required at the hearing

---

[4] In fact, the court noted that the lockbox arrangements routinely used by Chapter 13 Trustees for processing payments (as well as the recently adopted practice of debtor-made electronic payments) effectively prevent a trustee from inadvertently accepting a payment that might prepay the plan. Even though the court concluded that completion of payments under both §1328(a) and 1329(a) was simply a question of fact, it observed that the Trustee could raise and be heard on the issue of completion of payments as well as issues germaine to whether the payment entitles the debtor to a discharge under §1328(a), or the discharge under §1328(a) could be challenged under 11 U.S.C. §1330.

[5] §1329 literally creates a race to the courthouse. *See In re Ezell*, 438 B.R. 108 (Bankr. S.D.TX 2010), where the debtor completed the plan payments before a creditor proposed a modification, which the Court determined was barred. The court in *McCarthy*, at footnote 13, noted that the Trustee and the creditors would normally approve, or even applaud, a modification resulting in earlier payment of claims. This Court, however, believes that a simultaneous modification would not be beneficial.

6

confirmation, as the confirmed plan in place is binding, and in these cases, procedurally, the Trustee is limited to moving for an examination of the debtors under F.R.B.P. 2004 and filing a Motion and Plan under §1329(a), should the circumstances of the cases require or move to revoke confirmation (if timely filed) and convert the case under §1330 and §1307(c)(7). But, this Court having already confirmed the plan and overruled the Trustee's objection to the instant applications, speculation as to the sort of conduct that might justify the denial of a request to prepay a plan is, absent a properly filed pleading by the trustee or a creditor, irrelevant presupposition. In the meantime, the Court cannot condone the Trustee's present practice of routinely objecting to requests to prepay a plan on the pretext that, in some future case, such a request should be denied.

Nevertheless, upon further consideration and examination of the records in these cases, it has become evident that the debtors have failed to properly serve and notice all parties whose rights *may* be affected by the Applications in these matters, a fact that went unnoticed by this Court at the original hearing. As noted above, the notices of the Applications to Approve the Compromises and the Amendments were served and noticed upon the Trustee, the United States Trustee, the debtors and the personal injury counsel to the debtors, but the unsecured creditors were not served and did not receive a notice of hearing in violation of F.R.B.P. 2002(a)(2)and (3) and 9019(a), since the Applications pertained to the approval of a compromise and the proposed use thereof, which was estate property, to which the unsecured creditors had a right to file a countervailing Motion under §1329(a). Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement upon a motion of the trustee and after a hearing on twenty-one days' notice to *all creditors* and the U.S. Trustee. F.R.B.P. 2002(a)(3). Accordingly;

**IT IS ORDERED** that the ruling issued in these cases on August 22, 2013 is hereby **SUSPENDED**, reasons therefore **SUPPLEMENTED** herein, and Counsel to Debtors is **DIRECTED** to serve this ORDER on the respective classes of unsecured creditors, **WHO SHALL BE PERMITTED** ten (10) days to file appropriate pleadings in conformance with the reasons herein, which, if and only if filed, shall be set for hearing on **September 19, 2013** at 11:00 A.M., and **FAILURE TO FILE SAME** will result in the **REINSTATEMENT OF THE RULINGS MADE ON August 22, 2013, as supplemented by the reasons herein, as of September 10, 2013.**

# # #